# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

| | | |
|---|---|---|
| **IBERIA PARISH GOVERNMENT** | * | **CIVIL NO. 14-2985** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **SHANE ROMERO** | * | **MAGISTRATE JUDGE HILL** |

### REPORT AND RECOMMENDATION

Pending before the undersigned for report and recommendation is Defendant Shane Romero's ("Shane") Motion to Dismiss Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1367 filed on January 2, 2015.  [rec. doc. 7]. Plaintiff, Iberia Parish Government ("IPG"), filed opposition on January 27, 2015.  [rec. doc. 19].  Shane filed a reply on February 11, 2015.  [rec. doc. 22]. Oral argument was held on April 6, 2015. [rec. doc. 26].

For the following reasons, I recommend that the motion be **GRANTED**.

### Background

IPG filed suit in this Court asserting subject matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983 for claims allegedly arising under federal (both statutory and constitutional) law, and supplemental jurisdiction under 28 U.S.C. § 1367 for claims arising under state law.

On January 7, 2015, Shane filed the instant Motion to Dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6). A brief recitation

of the allegations in the Complaint are necessary.

The Iberia Parish Government Home Rule Charter for a Council-President Government ("Charter") was approved by Iberia Parish voters in a special election held on March 26, 1983, and was amended in a special election held on July 20, 1996. [Complaint, ¶ 6].  Section 1-02 of the Charter establishes the Iberia Parish Council as the legislative branch of the Iberia Parish Government.  [Complaint, ¶ 7].

Section 1-05 of the Charter provides, in pertinent part, as follows:

The Iberia Parish government shall have the right, power and authority to pass all ordinances or resolutions requisite or necessary to promote, protect and preserve the general welfare, safety, health, peace and good order of the Parish  . . .  subject only to the limitation that the same shall not be inconsistent with the Constitution or expressly denied by the general law applicable to the Parish.

Section 2–08 of the Charter provides, in pertinent part, that:

The Parish council may make investigations into the affairs of the Parish government and the related conduct of any Parish official, officer, employee, department, office, or agency and for this purpose may subpoena witnesses, administer oaths, take testimony and require the production of evidence.  Investigations shall be for a specified purpose and may be undertaken only by the affirmative vote of a majority of the members of the council at a regular meeting of the council.

[Complaint, ¶ 9].

Section 9-01 designates the District Attorney as the legal advisor to the Council. [Complaint, ¶ 10].

Shane is the son of Iberia Parish President, Errol "Romo" Romero ("Romo"), and an attorney. [Complaint, ¶ 11].

-2-

Without going into great detail here, suffice it to say that an ongoing political flight has erupted between the Council on one hand, and Shane and Romo on the other hand. This fight is detailed in reports of the Legislative Auditor, the Louisiana Attorney General, and a Special Counsel retained by the Council. [Complaint ¶ ¶ 11-27].

Additionally, complaints have been made to the Louisiana Ethics Board and various resolutions of the Council (which seek to prohibit certain actions of Shane and Romo) have been passed. In essence, the Council asks this Court to enforce its resolutions barring Shane from continuing to access the offices of the Iberia Parish government and serving as an advisor to his father, Romo.

On October 10, 2014, IPG filed this action against Shane asserting claims under 42 U.S.C. § 1983 for violation of the separation-of-powers doctrine; under § 1983 for violation of the right to due process under the Fourteenth Amendment, and for injunctive relief under the "Abuse of Right" doctrine pursuant to Article I, Section 7 of the Louisiana Constitution.

### Standard for Motion to Dismiss Under Rule 12(b)(1) and 12(b)(6)

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  *Id.*  Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist.  *Id.* (*citing Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

-3-

The standard for review of a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6).  *Harrison v. Safeco Ins. Co. of America*, 2007 WL 1244268, at *3 (E.D. La. Jan. 26, 2007).  When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (*quoting Martin K. Eby Constr. Co., Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *In re Katrina Breaches Litig*., 495 F.3d at 205 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Id*. (*quoting Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  *Twombly*, 550 U.S. at 555, 127 S.Ct. 1964-65 (citations, quotation marks, and brackets omitted) (emphasis added).  The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*citing Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  *Id.*

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.  *Ramming*, 281 F.3d at 161.

If the district court lacks subject matter jurisdiction, dismissal without prejudice is proper so as to allow the claims to be tried in a court with jurisdiction to hear them. *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 209 (5th Cir. 2010).

## <u>Analysis</u>

Shane argues that this lawsuit has should not be in federal court.  Rather, Shane asserts, this "convoluted" action is "an awkward contortion" of Section 1983 in an attempt to create "federal question" subject matter jurisdiction where none exists.  [rec. doc. 7, p. 1].  Shane contends that IPG's claims actually are "a poorly veiled attempt to use the federal courts to settle a local political dispute."

The undersigned agrees.

### <u>*Section 1983 Claims*</u>

In Count 1, IPG asserts a claim under § 1983 for violation of the separation-of-powers doctrine.  In Count 2, IPG argues that Shane violated its right to due process rights under the Fourteenth Amendment.[1]

---

[1]Count 3 asserted under the First Amendment of the U.S. Constitution is actually an anticipated rebuttal of a potential defense; thus, this count will not be considered.

Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

To state a section 1983 claim, a plaintiff must: (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1935 (2014).

### ***Separation-of-Powers Claim***

Plaintiff argues that defendant violated the separation-of-powers of the Iberia Parish Government by usurping the office of the Parish President "in an effort to impose his will on each of the branches of Parish government, including the Parish Council, as well as the 16th Judicial District Attorney."  [Complaint, ¶ 44].

The doctrine of separation of powers is concerned with the allocation of official power among the three coequal branches of our Government.  *Clinton v. Jones*, 520 U.S. 681, 699, 117 S. Ct. 1636, 1647, 137 L. Ed. 2d 945 (1997).  The Framers "built into the tripartite Federal Government . . . a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other."  *Id*. (*quoting Buckley v. Valeo*, 424 U.S. 1, 122, 96 S.Ct. 612, 684, 46 L.Ed.2d 659 (1976)).

The roots of the separation-of-powers concept are structural and political.  *Freytag v. C.I.R.*, 501 U.S. 868, 878, 111 S. Ct. 2631, 2638, 115 L. Ed. 2d 764 (1991).  The United States Supreme Court's separation-of-powers jurisprudence generally focuses on the danger of one branch's aggrandizing its power at the expense of another branch.  *Id.* (*citing  Mistretta v. United States*, 488 U.S. 361, 382, 109 S.Ct. 647, 660, 102 L.Ed.2d 714 (1989)).

The jurisprudence makes it clear that the separation-of-powers doctrine applies to the three branches of the federal government.  Shane asserts that IPG's division of governmental power is secured by the Home Rule Charter, not federal law. [rec. doc. 7, p. 4].  IPG rejects this assertion, arguing instead that the separation-of-powers doctrine is a "right held by [IPG] on behalf of its citizens that is, without any doubt, 'secured by the Constitution' within the meaning of 42 U.S.C. § 1983."  [rec. doc. 20, p. 21]. In spite of its assertion that this "right" is "without doubt" secured by the Constitution, IPC fails to cite any authority for its assertion.

The unsupported assertions of IPG notwithstanding, the undersigned has grave doubts.

The separation-of-powers doctrine is found in the United States Constitution, but the Constitution does not require state or local constitutions to incorporate that concept. *See Mayor of City of Philadelphia v. Educ. Equal. League*, 415 U.S. 605, 650 n. 13, 94 S. Ct. 1323, 1347, 39 L. Ed. 2d 630 (1974) ("The Constitution does not impose on the States

any particular plan for the distribution of governmental powers."); *Sweezy v. State of New Hampshire by Wyman*, 354 U.S. 234, 255, 77 S. Ct. 1203, 1214, 1 L. Ed. 2d 1311 (1957) ("[T]he concept of separation of powers embodied in the United States Constitution is not mandatory in state governments.").

It is clear to this Court that the separation-of-powers which is in effect in Iberia Parish is as a result of the Charter and not the Constitution of the United States. IPG cites no authority – nor is the Court aware of any – which would grant jurisdiction pursuant to § 1983 for this Court to decide a case which asserted a cause of action based on an alleged violation of the separation-of-powers provisions of a local government charter. To allow such an action would, in effect, broaden the reach of § 1983, and this Court's jurisdiction, to virtually any alleged violation of local law. That is beyond the reach of § 1983 and would impermissibly broaden this Court's limited jurisdiction.

Accordingly, I recommend that the motion to dismiss be granted as to Count 1 based on the lack of a federal Constitutional provision requiring separation-of-powers in a local government.


### *Due Process Claim under the Fourteenth Amendment*

In Count 2 of the Complaint, IPG alleges that Shane violated its right to due process under the Fourteenth Amendment by depriving it of "its right to use its property for the proper and efficient administration of the Iberia Parish Government."  [Complaint, ¶ 47].

Section 1 of the Fourteenth Amendment of the Constitution provides as follows:

> All *persons born or naturalized* in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

(emphasis added).  U.S. Const. amend. XIV.

IPG argues that, as a political subdivision or municipality, it is a "person" within the scope and meaning of § 1983, and has standing to sue Shane.  [rec. doc. 19, p. 12; Complaint, ¶ 40].  To properly analyze this contention, the Court finds it necessary to consider what the Civil War Amendments were designed to achieve.[2]

Section 1 of the Civil Rights Act of 1871, 17 Stat. 13, was the precursor to § 1983. *Patsy v. Board of Regents of State of Fla.*, 457 U.S. 496, 502-03, 102 S. Ct. 2557, 2561, 73 L. Ed. 2d 172 (1982).  The Civil Rights Act of 1871 was enacted to enforce Sec.1 of the Fourteenth Amendment. Both were crucial ingredients in the basic alteration of our federal system accomplished during Reconstruction.  *Id*.  As a result, the Federal Government was clearly established as a guarantor of the basic federal rights of

---

[2]The Civil War Amendments consist of the Thirteenth, Fourteenth and Fifteenth Amendments.  *Oregon v. Mitchell*, 400 U.S. 112, 126, 91 S. Ct. 260, 265, 27 L. Ed. 2d 272 (1970).  Section 2 of the Thirteenth Amendment, which abolished slavery, provides that "Congress shall have power to enforce this article by appropriate legislation."  In virtually identical language, § 5 of the Fourteenth Amendment and § 2 of the Fifteenth Amendment give Congress the power to enforce the provisions of those Amendments. *Fullilove v. Klutznick*, 448 U.S. 448, 500, 100 S. Ct. 2758, 2786, 65 L. Ed. 2d 902 (1980).

individuals against incursions by state power.  *Id*.

In 1873, in one of the earliest cases interpreting the Thirteenth and Fourteenth

Amendments, the Supreme Court observed:

> '(N)o one can fail to be impressed with the one pervading purpose found in
> * * *  all (these Amendments), lying at the foundation of each, and without
> which none of them would have been even suggested; we mean the freedom
> of the slave race, the security and firm establishment of that freedom, and
> the protection of the newly-made freeman and citizen from the oppressions
> of those who had formerly exercised unlimited dominion over him. * * *'
> *Slaughter-House Cases*, 16 Wall. 36, 71, 21 L.Ed. 394.

*Bell v. State of Md.*, 378 U.S. 226, 289, 84 S. Ct. 1814, 1849, 12 L. Ed. 2d 822 (1964).

A few years later, the Supreme Court observed that these Amendments were

written and adopted "to raise the colored race from that condition of inferiority and

servitude in which most of them had previously stood, into perfect equality of civil rights

with all other persons within the jurisdiction of the States."  *Id*. (*citing Ex parte Virginia*,

100 U.S. 339, 344-345, 25 L.Ed. 676 (1879)).


In that same Term, the Court in *Strauder v. West Virginia*, 100 U.S. 303, 307, 25

L.Ed. 664 (1879), stated that the recently adopted Fourteenth Amendment must "be

construed liberally, to carry out the purposes of its framers."  *Id*.  Such opinions

immediately following the adoption of the Amendments clearly reflect the contemporary

understanding that they were "to secure to the colored race, thereby invested with the

rights, privileges, and responsibilities of citizenship, the enjoyment of all the civil rights

that, under the law, are enjoyed by white persons * * *."  *Neal v. Delaware*, 103 U.S. 370,

-10-

386, 26 L.Ed. 567 (1880).

Given this historical basis of the Fourteenth Amendment, it is clear that its purpose was to guarantee the rights of citizenship to former slaves and to grant these newly-recognized citizens all of the protections of law. In the *Slaughter-House Cases*, it was recognized that the protections of the Fourteenth Amendment applied to all citizens, although its scope was limited.

Various cases have rejected attempts to extend the protections of the due process clause to state and local governments. In *State of South Carolina v. Katzenbach*, 383 U.S. 301, 86 S.Ct. 803 (1966), the Court said:

> Some of these contentions may be dismissed at the outset. The word 'person' in the context of the Due Process Clause of the Fifth Amendment cannot, by any reasonable mode of interpretation, be expanded to encompass the States of the Union, and to our knowledge this has never been done by any court. See *International Shoe Co. v. Cocreham*, 246 La. 244, 266, 164 So.2d 314, 322, n. 5, cf. *United States v. City of Jackson*, 318 F.2d 1, 8 (C.A.5th Cir.).

At 323-24.

In *City of Trenton v. State of New Jersey,* 262 U.S. 182, 43 S.Ct. 534 (U.S.1923), the Court said:

> The power of the state, unrestrained by the . . . the Fourteenth Amendment, over the rights and property of cities held and used for 'governmental purposes' cannot be questioned. . . . In none of these cases was any power, right, or property of a city or other political subdivision held to be protected by the . . . the Fourteenth Amendment.

At 188.

In *State of La. ex rel. Guste v. Verity,* 681 F.Supp. 1178 (E.D. La.,1988), the Court said:

-11-

> Neither may the State of Louisiana bring against the United States claims that the State's due process or equal protection rights have been violated. The State has no such rights. (citations omitted)

At 1181.

Finally, in *State of Wisconsin v. Zimmerman,* 205 F.Supp. 673, 675 (D.C.Wis. 1962), the Court said:

> The real question here at issue is whether the State of Wisconsin is a 'person' within the scope of the protection of the Fourteenth Amendment. In our view, it is not.
>
> Many cases have held rights created by the equal protection clause of the Fourteenth Amendment are guaranteed to the individual, and that such rights are 'personal rights.'
>
> In Shelley v. Kraemer, 334 U.S. 1, 22, 68 S.Ct. 836, 846, 92 L.Ed. 1161, the Court stated: '* * * The rights created by the first section of the Fourteenth Amendment are, by its terms, guaranteed to the individual. The rights established are personal rights.' (Citing McCabe v. Atchison, Topeka & Santa Fe R.R. Co., 235 U.S. 151, 161-162, 35 S.Ct. 69, 59 L.Ed. 169; Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208; Oyama v. California, 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249).
>
> In United States v. Nebo Oil Co., Inc., D.C., 90 F.Supp. 73, the Court said at page 95: 'It has repeatedly been held that a sovereign is not a 'person' within the meaning of the Fourteenth Amendment.'

Given this authority, as well as the historical background of the Fourteenth Amendment, it is clear that for the purposes of the Fourteenth Amendment, the Iberia Parish Government is not a "*person[] born or naturalized* in the United States" and that it does not, therefore have any right guaranteed by the Fourteenth Amendment.

Even if this Court were to assume that the Iberia Parish Council was a "person" as contemplated by the Fourteenth Amendment, this Court cannot conceive of a deprivation

-12-

of due process which occurred under the facts pled herein. This is a political fight between two branches of local government and the Fourteenth Amendment was never intended to apply to such political fights.

Accordingly, I recommend that the motion to dismiss be granted as to Count 2.

## *Supplemental Jurisdiction*

IPC also asserts that this Court has supplemental jurisdiction under 28 U.S.C. § 1367 to adjudicate its claim arising under the Louisiana Constitution.

The decision to exercise or decline supplemental jurisdiction over the state law claims is entirely within the discretion of this Court. *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989).  In making this decision, the Court must consider and weigh both the statutory provisions of 28 U.S.C. § 1367(c)  and the values of judicial economy, convenience, fairness and comity.  *See Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350–51, 108 S.Ct. 614, 619 (1988); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

The general rule of this Circuit is "to dismiss state claims when the federal claims to which they are pendent have been dismissed." *Parker & Parsley Petroleum v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir. 1992). Here, the Court finds that the values of judicial economy, convenience, fairness, and comity justify dismissal of Shane's claims. *Cohill*, 484 U.S.at 350, 108 S.Ct. at 619 (holding dismissal without prejudice proper under such circumstances).

For the reasons set forth in above, the undersigned finds that the pendant state claim

should be dismissed without prejudice.

<u>Conclusion</u>

For the foregoing reasons, I recommend that Defendant Shane Romero's Motion to Dismiss Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1367 [rec. doc. 7] be **GRANTED**, and that all of plaintiff's claims be **DISMISSED WITHOUT PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc.72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

-14-

May 11, 2015, Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE